# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| NOURI ALAALI, | |
| Petitioner, | Case No. CV 09-186-S-REB |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of the United States Social Security Administration,, | |
| Respondent. | |

Pending before the Court is Nouri Alaali's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

Petitioner Nouri Alaali ("Petitioner") was 46 years old at the alleged disability onset date. AR 30, 564. His home country is Iraq and he has been in the United States since his admission as a refugee in 2001. AR 357, 368. He became a naturalized citizen of the United States on April 30, 2007. AR 369.

On July 14, 2003, Petitioner applied for disability insurance benefits, alleging disability beginning February 10, 2003. (AR 18, 87-91, 464). At issue here is Petitioner's claim that he is disabled from degenerative disc disease and post traumatic stress disorder ("PTSD"). (AR 18,

**MEMORANDUM DECISION AND ORDER - 1**

22).  Petitioner's claim was denied initially and upon reconsideration, and he filed a request for a hearing.  (AR 330).

On February 7, 2006, a hearing was held on Petitioner's claims and Administrative Law Judge ("ALJ") Hayward Reed considered testimony from Petitioner (through an interpreter), Michael Dennis, M.D., a medical expert, and Polly Peterson, Ph.D., a vocational expert.  (AR 330, 506, 508-09).  Petitioner was represented in this first hearing by attorney Larry Weeks. (AR 506).

The ALJ issued a decision denying Petitioner's application on August 15, 2006.  (AR 330-40).  The Appeals Council granted Petitioner's request for review, vacated the hearing decision, and remanded the case back to an ALJ for another hearing to evaluate Petitioner's subjective complaints.  (AR 18, 349-51).

On March 25, 2008, Administrative Law Judge ("ALJ") Michael A. Kilroy presided over a second hearing (AR 18, 543-92) during which testimony was taken from Petitioner (again through an interpreter), Linda Lester, a licensed social worker, Michael Dennis, M.D., a medical expert, and James Grissom, Ph.D., a vocational expert.  (AR 543, 545).  Petitioner was represented by attorney Debra Young-Irish, the attorney representing Petitioner in the present case.  (AR 543).

The ALJ issued a decision denying Petitioner's application on August 19, 2008.  (AR 18-31).  The Appeals Council denied Petitioner's request for review on March 20, 2009 (AR 6-8), making the ALJ's decision the final Agency decision.  20 C.F.R. §§ 416.1481, 422.210.  This appeal followed.

**MEMORANDUM DECISION AND ORDER - 2**

Having exhausted his administrative remedies, Petitioner argues on appeal that the ALJ: (1) erred in failing to find that his back condition was severe; (2) failed to properly support his finding that Petitioner's allegations concerning his back pain and his mental impairments were not credible; (3) was biased and failed to give Petitioner a fair hearing; and (4) failed to properly support his rejection of the opinions of treating physicians and other medical providers.  Pet.'s Br., p. 9 (Docket No. 14).  Petitioner therefore requests that the ALJ's decision be reversed and/or remanded to a different ALJ.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.     Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process when determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 4**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since his application date. AR 20.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the

**MEMORANDUM DECISION AND ORDER - 5**

ALJ found that Petitioner's history of adjustment disorder with depressed mood and probable PTSD were severe impairments, AR 20, but found that Petitioner's alleged back pain due to degenerative disc disease "is not a severe, medically determinable impairment for any relevant 12 months in a row," AR 22.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, one of the listed impairments. AR 23.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b),

404.1565, 416.960(b), 416.965.  The ALJ found that Petitioner has no past relevant work.  AR

29.

Here, the ALJ determined that Petitioner has the residual functional capacity "to perform

a full range of work at all exertional levels but with the following nonexertional limitations:"

> In terms of social contact in the workplace, the claimant would be
> limited to a job that does not require him to deal with the American
> public based on the inability to speak English.  He would be able
> to work in proximity with co-workers, but preferably with the
> same co-workers or co-workers who do not need to interact with
> him to get work done primarily due to the language barrier.  He
> can work in a job that would require minimal supervision due to
> the language barrier, but if a language interpreter is available then
> there would be no limitation in regards to supervision.  In the area
> of supervision there would need to be the ability for someone to
> provide supervision in terms of how to do the work.  In the areas of
> concentration, persistence and pace, he would be able to do a
> routine job that would involve only occasional new learning which
> can be provided through an interpreter, and in a setting where he
> would have the opportunity to ask questions to be sure he
> understood the instructions.  He would be able to do unskilled jobs
> and the low-end of semi-skilled jobs because of the language
> difficulties.  He would be able to do a job that would not require a
> high level of focus for the entire eight hours.  He would be able to
> do [a] job that is low in stress, but would be able to do a job with a
> quota requirements if there was no new learning involved.

AR 24.

In the fifth and final step, the burden shifts to the Commissioner to show that the claimant

retains the ability to do alternate work and to demonstrate that such alternate work exists in

significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),

404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the

claimant is able to do other work, he is not disabled; if the claimant is not able to do other work

**MEMORANDUM DECISION AND ORDER - 7**

and meets the duration requirement, he is disabled. Here, the ALJ found that there are jobs in significant numbers in the national economy that Petitioner can perform. AR 30.

**B.      Analysis**

Petitioner is unable to read and communicate in English. AR 30, 564. This has hampered his ability to effectively communicate with treatment providers and the examining physicians. *See, e.g.*, AR 164, 173, 273. As the ALJ and the medical expert testifying at the hearing both agreed, "language is an issue in this case." AR 581. The Court agrees, and it is within this context the Petitioner's objections to the ALJ's decision have been considered.[1]

1.      Credibility

Petitioner argues that the ALJ failed to properly support his finding that Petitioner's allegations concerning his back pain and his mental impairments were not credible. Pet.'s Br., p. 11. Although this issue does not appear first in Petitioner's briefing, the Court will consider it first as it may impact the other issues raised.

---

[1] The Court notes this primarily for background purposes because Petitioner repeatedly asserts that the ALJ's findings were, at times, based on misunderstandings created by the language issue. In social security cases the ability to speak English is not a factor the ALJ must consider at the fourth step, but is a factor that must be considered at the fifth step. *See, e.g.*, *Chavez v. Barnhart*, 298 F.Supp.2d 1207, 1216 (D. Kan. 2004); *Ordonez v. Massanari*, No. C00-4145-DEO, 2001 WL 34008720, *15 (N.D.Iowa Sept.13, 2001) ( "The ALJ only has to consider a claimant's limited ability to speak and understand English if the ALJ determines [at step four] that the claimant can not perform previous relevant work."). It is not the ALJ's treatment of Petitioner's language barrier in the five-step sequential process that is at issue here, but rather how Petitioner's inability to speak and understand English, and at times have a translator with his dialect present, may have impacted the credibility issues in this case. Indeed, the ALJ appropriately considered Petitioner's language limitation when assessing an RFC. *See supra*, p. 7.

a.    *Legal Standards*

"Credibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). In evaluating a claimant's credibility, the ALJ may consider claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). It should be noted, however, that to reject a claimant's testimony about pain, symptoms, and limitations, the ALJ must make specific findings stating clear and convincing reasons for doing so, unless there is evidence of malingering. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

If there is evidence of malingering, the ALJ does not need "clear and convincing" reasons to reject Petitioner's testimony about his physical condition and limitations.[2] *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) ("The ALJ could . . . reject [claimant's] testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" (internal citations omitted)). Instead, the credibility finding must be "supported by substantial evidence in the record," and the

---

[2] Respondent cites to Dr. David Starr's psychological report as evidence that Petitioner is malingering and, accordingly, the clear and convincing standard should not be applied to review the ALJ's credibility determination. Resp.'s Br., p. 7 (Docket No. 15). For the reasons explained below, the Court finds this evidence of malingering, even though obtained in a less-than-perfect testing situation, is sufficient to require use of the lower "substantial evidence" standard.

Court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

        b.      *Petitioner's Credibility With Regard to his Mental Impairments*

Petitioner takes issue with the ALJ's credibility findings in relation to his PTSD.[3] The ALJ found Petitioner had "possible/probable PTSD" and that it, and his depression, have at least "more than a minimal effect on [his] mental ability to perform basic work activities." AR 22. However, the ALJ also found that "the claimant's allegation of PTSD related to traumatic events (while in Iraq) cannot be independently verified and the claimant's own statements have varied in regards to reported traumatic experiences in Iraq." AR 21. The ALJ noted that there are no physical evidence of injuries or objective findings of torture.[4] These findings appear inconsistent; the ALJ assessed Petitioner's PTSD as a limitation, but then seems to question the diagnosis of that condition by questioning whether Petitioner was ever tortured. At first glance, the fact that the ALJ accepted the diagnoses of PTSD, but did not accept that there was an underlying cause of that PTSD, i.e., torture, is troublesome. On closer review of the record and

_____

[3] PTSD is defined as

> the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity; or witnessing an event that involves death, injury, or a threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate . . . . The person's response to the event must involve intense fear, helplessness, or horror . . . .

American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders, at 424 (4th ed. 1994) ("DSM-IV").

[4] It is notable that PTSD can be caused by "an extreme traumatic stressor involving direct personal experience of an event that involves actual or *threatened* death or serious injury," DSM-IV at 424 (emphasis added), and so there will not always be physical manifestations of torture.

**MEMORANDUM DECISION AND ORDER - 10**

the ALJ's decision, however, it appears that he accepted as probable the PTSD diagnosis, but found that Petitioner's statements as to the events triggering that impairment were not supported by objective evidence and, thus, undermined Petitioner's credibility. AR 21. The issue of corroborating the PTSD was raised by psychologist Dr. David Starr, who reported that "the claimant likely meets the diagnostic criteria for PTSD *if it can be determined he actually suffered from the reported psychosocial stressors*." AR 20 (emphasis added). Standing alone though, the allegedly unsupported assertion of torture by Petitioner, which relates to his *diagnosis*, would not amount to a substantial reason for finding Petitioner not credible as to his *limitations*. However, the ALJ provided other reasons for his credibility determination.

The ALJ also described Petitioner's testimony as inconsistent, noting that Petitioner responded to questions about his army service by reporting "both that he was in the army and was not in the army, that he deserted from the army and that he did not desert the army," and that he said he "was not a prisoner of war" but had reported to Linda Lester, as social worker, that he was a prisoner of war.[5] AR 26. First, it is not clear from the treatment record the ALJ cited

_____

[5] In regard to this testimony, Petitioner asserts that the ALJ "failed [at the hearing] to elicit the fact that [P]etitioner served two tours of duty in the army," and "[h]ad the ALJ been patient enough to ask the right questions, he would have seen that there is no significant conflict in [P]etitioner's testimony." Pet.'s Br., p. 13. The Court notes, however, that Petitioner's counsel appeared at the hearing and had the opportunity to ask questions, but chose to not ask any follow -up questions. *See, e.g.*, *Martinez v. Astrue*, 2009 WL 840661 (D.Conn. Mar. 30, 2009) ("If there were difficulties or errors of interpretation, Martinez's attorney had ample opportunity to question her and could have clarified any inadequate or inaccurate responses."). Petitioner is correct that the ALJ has a duty to fully develop the record, even when a claimant is represented. Pet.'s Br., p. 13; *Brown v. Heckler*, 713 F.2d 441 (9th Cir. 1983). To that end, the ALJ held the record open so that Petitioner could provide immigration paperwork to document the reasons for his immigration to the United States, which may include information to corroborate the torture, army experiences, and the basis for Petitioner's PTSD diagnosis. AR 21.

In attempt to resolve any confusion about his testimony, Petitioner provided statements to

(28F, p. 16; AR 450) that Petitioner reported to Ms. Lester that he was a "prisoner of war." On the page of her notes referred to by the ALJ, Ms. Lester reports that "[w]hen in Iraq [Petitioner] was taken to prison." AR 450. Later on that same page, when giving her "Diagnostic Impression," she listed at "Axis II" a note of "Prisoner of War." *Id.* Nowhere does her report indicate that Petitioner *told her* he was a prisoner of war. In other places in the same records from Ms. Lester, the Petitioner reported that he was imprisoned in Iraq. *See, e.g.*, AR 442, 451. She also noted in her records and testified at the hearing that Petitioner said he was targeted and imprisoned because he was a Shiite Moslem. AR 442, 469. Moreover, Petitioner consistently reported to others that he was tortured in Iraq. *See, e.g.*, AR 167, 469. Accordingly, these inconsistencies do not provide substantial evidence to support the ALJ's credibility determination.[6] *See* SSR 96-7P, 1996 WL 374186 (the adjudicator should "review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects").

---

his counsel through a translator who spoke his dialect. AR 488-502. This transcript was provided to the Appeals Council after the ALJ issued his decision. In this statement, Petitioner explained that he was in the Iraq army on two different occasions, first performing five years of mandatory service and then again later, after he was arrested by the Iraq army and imprisoned for four to six months. AR 490-92. Petitioner reported that it was during this latter time period that he was questioned and tortured, but finally released and impressed into the military service again. AR 491. Petitioner stated that he was arrested and imprisoned again for three to four months after he was released from the army. AR 496. The Court has considered this information as it is appropriately in the record, but concludes that the inconsistent statements relied on by the ALJ, are not necessarily inconsistent and, in that regard, has determined they do not provide support for the ALJ's credibility determination.

[6] The Court notes that the language barrier again created issues with gathering and interpreting evidence in this case. At least one court has agreed with a claimant's argument that an alleged inconsistency in the record "is unreliable because of the language barrier between he and his treating physicians." *Norng v. Shalala*, 885 F.Supp. 1199, 1216 (N.D.Iowa 1995). The court in *Norng* found that the ALJ erred in using in his credibility analysis an alleged inconsistency created by a language barrier.

**MEMORANDUM DECISION AND ORDER - 12**

The ALJ also seems to suggest that Petitioner's claim to suffer from the symptoms of PTSD is undermined by the fact Petitioner lived and worked in Syria for a number of years and during that time he was "away from the problems he may or may not have encountered in Iraq." AR 21. The DSM-IV indicates that PTSD can be subject to a delayed onset. *Adame v. Apfel*, 4 Fed.Appx. 730, 732, 2001 WL 193820, *2 (10th Cir. 2001) (citing DSM-IV, at 425). The Court thus concludes that this asserted basis does not provide support for the ALJ's credibility determination.

Although the Court has explained its concerns with the ALJ's reliance in making his credibility assessment on the alleged inconsistencies in Petitioner's testimony and his failure to prove torture, these were not the ALJ's only grounds for his unfavorable credibility determination. The ALJ's credibility determination should still be upheld if other evidence in the record provides substantial support for his decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (indicating that an ALJ's decision may be upheld where some of the findings related to credibility are supported by the record and provide ample evidence to support the adverse credibility determination); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless).

To that end, the ALJ also relied on examining physician, James M. Read, Ph. D., in making his credibility assessments. AR 20-21. Dr. Read examined Petitioner on October 14, 2003, and reviewed some of Petitioner's treatment records. AR 164. Dr. Read noted at the outset that he interviewed Petitioner with the aid of a translator speaking a "slightly different dialect of Arabic language, which made it difficult for the translator, who speaks English very

well to fully understand the claimant." AR 164. This made the entire interview extremely difficult. AR 164. Dr. Read stated that he would have much preferred to have been able to interview Petitioner in his native language. AR 173. In considering Dr. Read's testimony, the ALJ noted that "there was a language barrier and the mental status exam and interview was conducted with the aid of a translator." AR 20. The Court finds that the ALJ viewed Dr. Read's report through the appropriate lens when he acknowledged the language difficulties, and thus could rely on Dr. Read's findings, including that "there may be some degree of overendorsement of symptoms" and that it sounded like Petitioner may have been "coached" about his symptoms, *see* AR 172.

The ALJ also relied on an examination performed two and one-half years later by Dr. David R. Starr, Ph.D. AR 269. This time Petitioner's daughter translated the proceedings. Dr. Starr reported that he administered the Test of Memory Malingering and that it was carefully explained to Petitioner on several occasions by different means and the interpreter assured the examiner that Petitioner understood the task. AR 272. Dr. Starr found Petitioner's overall pattern of response to the test "statistically and profoundly unusual and . . . not likely to be the result of a random response." AR 272. Dr. Starr concluded that Petitioner "did not do his best to give accurate responses" to the test and he "may have been malingering." AR 273. Because this provides affirmative evidence of malingering, the Court has applied the substantial evidence standard to review the ALJ's credibility determination.

It is notable that Dr. Starr, similar to Drs. Read and Dennis, reported that Petitioner was "somewhat difficult to interview" because his daughter was the interpreter and "[w]henever an

interpreter is used in this type of assessment, the validity of the assessment is always in question." AR 273. Dr. Starr explained that "[t]here is an outside chance that [Petitioner] did not understand the instructions," and "[t]here may well be cultural issues that interfere with the validity of this assessment," AR 273, but the ALJ focused on Dr. Starr's note that "the test instructions are very simple" and that Dr. Starr explained them several times to the interpreter, who assured Dr. Starr that Petitioner did in fact understand the instructions. AR 273. Given that this second test was administered with an interpreter who spoke Petitioner's dialect, even though the testing situation was not ideal because of the language barrier,[7] the ALJ appropriately weighed Dr. Starr's findings and relied on his interpretation of that examination in assessing Petitioner's credibility. Nothing in the regulations requires examinations to be performed under ideal circumstances and, indeed, it appears from Dr. Dennis's testimony that there can never be an ideal testing situation when there is a language barrier. *See* AR 579 (Dr. Dennis describes that "typically the types of tests that a psychologist would administer require the ability to easily interact with the person you are testing, and understand [that person's] responses, and for them to be able to understand clearly the questions").

---

[7] The Court finds the testimony of Dr. Dennis, the medical expert (psychologist) testifying at the second hearing, significant in this regard. Although Respondent relies on Dr. Dennis's testimony as evidence of Petitioner's malingering; the Court finds his testimony more equivocal. Dr. Dennis explained to the ALJ that "typically the types of tests that a psychologist would administer require the ability to easily interact with the person you are testing, and understand [that person's] responses, and for them to be able to understand clearly the questions." AR 579. Thus, it is "always very difficult to rate" items such as concentration, persistence, and pace, "in situations where an interpreter is required and the claimant does not speak English." *Id.* Dr. Dennis discussed Dr. Starr's report and noted that the test Dr. Starr performed is designed to assess the possibility of malingering and, although Petitioner's "results were suggestive of malingering" the examiner included a "rule out diagnosis of malingering," which means that Dr. Starr did not actually give the diagnosis but considered it as a possibility." AR 580-81.

**MEMORANDUM DECISION AND ORDER - 15**

As additional support for his credibility determination, the ALJ found that Petitioner's statements "that he is unable to be out in public, whether based upon PTSD, agoraphobia, or any other mental illness, is also undermined by his two attempts to work, during which he apparently had difficulties because of temporary physical problems and not mental (social) ones."  AR 21; *see also* AR 23-24.  Petitioner testified that he left his cleaning job (which he apparently held for about five months) because he slipped, fell, hurt himself, and was unable to work, AR 97, 475, and that he worked for a month or two making sandwiches, but his back pain started and he was laid off, AR 476.

Although it does not necessarily "follow from the fact that a claimant tried to work for a short period of time" that "he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment," *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007), the cases applying this rationale do so when the Petitioner failed to continue with employment because of his impairments.  *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's finding that the claimant was not credible, but noting that the ALJ "could easily have relied on other ... evidence in the record to reach the opposite conclusion. Fair attempted to work in 1981, but testified that his pain forced him to stop."); *see also Rosario v. Sullivan*, 875 F.Supp. 142, 146 (E.D.N.Y. 1995) (holding that substantial evidence did not support the ALJ's decision that claimant was not disabled, in part because claimant's unsuccessful work attempt weighed in favor of a disability finding).  Thus, the ALJ was permitted to take Petitioner's work history into account in his credibility determination, although the Court views it as providing minimal weight given the short terms of the jobs Petitioner held.

**MEMORANDUM DECISION AND ORDER - 16**

In conclusion, there is evidence in the record supporting Petitioner's claimed limitations related to his PTSD and adjustment disorder diagnoses.[8] There also is evidence supporting the ALJ's decision to discount many of those claimed mental limitations. On balance, and considering the standard of substantial evidence that applies here, the Court concludes that the ALJ provided substantial reasons supporting his credibility determination with respect to Petitioner's mental limitations.

> c.    *Credibility Determination Related to Claimed Limitations*
> *From Back Pain*

The ALJ also provided sufficient support for his finding that Petitioner's "subjective complaints of disabling back pain are rejected for lack of credibility." AR 25. This is discussed more fully in Section B.2, *infra*.

### 2.    Petitioner's Back Pain as Severe Condition

Petitioner argues that the ALJ erred in failing to find that his back condition was severe and in assessing his credibility with regard to his pain and limitations testimony. Petitioner bears the burden of establishing a severe impairment by providing medical evidence showing he has an impairment and how severe it is during the time he alleges disability. 20 C.F.R. § 416.912(c); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). An impairment is not

---

[8] For example, Dr. Dennis also testified that Petitioner's isolation, limited activities outside of the household, and insomnia (which is "commonly reported throughout the record") support the depression and PTSD diagnoses. AR 478. Dr. Dennis agreed with Petitioner's social worker that Petitioner's isolation may be because of a combination of language difficulties and PTSD. AR 478.

severe if it has no more than a minimal effect on the ability to do basic work activities.  SSR 96-3p.

The ALJ found Petitioner's back pain was not a severe, medically determinable impairment.  AR 22.  The ALJ relied on the previous ALJ's decision in this regard, which he noted was "not disturbed by the remand order."  *Id.*; *see also* AR 333-35.  The first ALJ's decision described a treating orthopedist's examination, which revealed that Petitioner "moved well and did not appear to have any paraspinous muscle spasm" and his pain was "very vague," and resulted in the orthopedist's assessment that "claimant's back pain is not established on examination."  AR 334; *see also* AR 155.  The first ALJ also noted that x-rays of the spine show no objective findings to support the "alleged back impairment, which impacts negatively on [Petitioner's] credibility."  AR 334; *see also* AR 251 (March 2002 radiological interpretation of lumbar spine x-ray, noting "normal lubosacral spine" and "[n]o abnormalities in the posterior elements").

The ALJ in the most recent decision also relied on Dr. Grajcar's more recent lumbar MRI, in April 2005, which demonstrated changes that were "mild in degree and negative for significant findings"; "a normal MRI according to Dr. Grajcar."  AR 22; 297, 302, 314.  The ALJ noted another normal lumbar spine x-ray and normal bone scan of the lumbar spine in July 2005.  *See* AR 313 (radiologist reports x-ray findings as: "no acute bony abnormality identified," "no malalignment or instability seen," and "within normal limits").  The ALJ cited to an examination that revealed "no neurological deficits, normal sensation, reflexes, coordination, muscle strength and tone."  AR 293-318.

**MEMORANDUM DECISION AND ORDER - 18**

The record supports all of these findings and the ALJ's determination that "[b]ecause the claimant's subjective back pain complaints are not reasonably related to a medically determinable impairment, it cannot be considered to cause any functional restrictions pursuant to SSR 96-4p." AR 22. In summary, the ALJ found that "[a]lthough there are mild or minor degenerative changes, [Petitioner] has two normal lumbar MRI scans, no clinical evidence of an actual herniated disc or nerve root impingement, and no physical findings consistent with chronic pain such as muscle spasms, atrophy, decreased muscle strength or radicular pain." AR 25.

Although there is some evidence in the record supporting Petitioner's view that his low back pain is limiting,[9] such as positive straight leg raise tests (AR 302-303, 381, 410), there also is substantial evidence to support the ALJ's findings and determinations with regard to Petitioner's credibility about the limitations and pain allegedly caused by his back issues and as to the ALJ's determination that Petitioner's back issues are not severe. Because the ALJ's interpretation was reasonable, it is entitled to deference in this case. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Petitioner has not met his burden of proving his back condition significantly limited his physical ability to do basic work activities. *See* 20 C.F.R. § 416.920(c);

_____

[9] Some of the testimony Petitioner points to is equivocal. For example, Petitioner asserts that he had difficulty at his jobs because of back pain. AR 571. Evidence in the record undermines this assertion. Petitioner visited Dr. Daines on March 10, 2003, for a follow-up on his knee sprain and Dr. Daines noted that Petitioner "is now complaining of a more diffuse pain involving his entire left leg and now, for the first time, pain in his lower back" AR 155. Dr. Daines reported that the pain complaints were likely due to Petitioner trying to guard his knee, and Dr. Daines did not believe there was an injury to the back, a newly complained-of area of distress. AR 156. Dr. Daines eventually cleared Petitioner to return to full duties at his cleaning job, opining that Petitioner "has healed these injuries. His ongoing disability is by and large self determined." AR 22, 154.

**MEMORANDUM DECISION AND ORDER - 19**

SSR 96-3p; *Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."). Therefore, the Court will not substitute its judgment where, as here, the evidence in the record can support the ALJ's findings.

        3.     <u>The Weight of the Medical Evidence</u>

        a.     *Dr. Mark Turner*

Petitioner argues that the ALJ should have given more weight to the opinion of Mark Turner, M.D., a physician who reviewed Petitioner's file at the Tidwell Social Work clinic where Petitioner and his family received treatment. Pet.'s Br. at 19. Petitioner argues that Dr. Turner's report was rejected "by implication" and that it should be accorded the status of a treating physician's opinion. Dr. Turner opined that Petitioner suffers from chronic leg and back pain, and PTSD in which he experiences intense nightmares, flashbacks, psychic numbing, and periods of depression and anger. AR 421. However, it appears from the record that Dr. Turner met with Petitioner, along with Petitioner's wife, on only one occasion and reviewed Petitioner's chart to make his assessment. AR 421, 427. Thus, the Court considers Dr. Turner more along the lines of reviewing or perhaps examining, but not a treating, physician. *See* Pet.'s Br., p. 19 (stating that "Dr. Turner r*eviewed* the petitioner's file" to provide his opinion letter).

The ALJ properly discounted Dr. Turner's opinion, finding it was "conclusory in nature, was not related to clinical medical findings, and relied largely on subjective reports of symptoms and limitations provided by the claimant which are overstated and not entirely credible." AR 28.

**MEMORANDUM DECISION AND ORDER - 20**

For the same reasons described in section B.2, above, to the extent the ALJ rejected Dr. Turner's opinion as to Petitioner's back pain as not related to clinical medical findings, the Court finds that rejection supported by substantial evidence. *See Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). To the extent the ALJ rejected Dr. Turner's opinion about Petitioner's PTSD and the limitations it causes, the Court finds the ALJ appropriately relied on the opinions of Drs. Starr and Read and on the ALJ's credibility determinations to determine the impact of Petitioner's PTSD on his work limitations. *See* discussion at section B.1, *supra.*

> b.      *Social Worker Linda Lester*

Petitioner also objects to the ALJ's treatment of testimony provide by Linda Lester, a licensed clinical social worker who has worked with Petitioner in the clinical setting. Pet.'s Br., p. 20. Petitioner is correct that the Social Security Rulings provide that the ALJ should consider other sources such as social workers, who "may provide insight in to the severity of the impairment(s) an how it affects the individual's ability to function." SSR 06-03p. Lay witnesses, however, may not provide a diagnosis. *See* 20 C.F.R. § 416.913(a); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Ms. Lester's opinion was contradicted by two consultative psychologists, Drs. Starr and Dr. Read, both acceptable medical sources. *See* 20 C.F.R. § 416.913. In relation to the ALJ's credibility determinations, the Court has already concluded that the ALJ appropriately considered these reports and relied on them for his limitations findings, instead of adopting the

findings and opinions of Ms. Lester.  Accordingly, Petitioner has not met his burden of demonstrating that the ALJ erred in his consideration of the medical evidence.

### 4.  ALJ Bias

Petitioner asserts that the ALJ's behavior indicates the ALJ was biased against Petitioner, "likely" because Petitioner is Iraqi.  Pet.'s Br., p. 16.  Petitioner legally immigrated to the United States from Iraq in 2001.  Petitioner argues that the following actions support a claim for bias: At the March 2008 hearing, the ALJ requested that Petitioner submit additional documentation from his immigration file.  AR 591.  Some documents were provided to the ALJ in May 2008, and others were sought through a Freedom of Information Act ("FOIA") request.  By the end of July 2008, no information had yet been provided under the FOIA request and Petitioner asked that the ALJ proceed with making a decision on Petitioner's disability claim instead of delaying longer to wait for immigration documents.  AR 32; 503.  The ALJ complied and issued a ruling on the information in the record.

When faced with a claim of bias, the Court must start with the presumption that administrative adjudicators are unbiased and that they exercise their decision-making authority with honesty and integrity.  *See Schneider v. McClure*, 456 U.S. 188, 195-196 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Rollins v. Massanari*, 261 F.3d 853, 857-58 (9th Cir. 2001) (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999)).  This presumption can be rebutted by a showing of a conflict of interest or by showing some other specific reason for disqualification.  *Schneider*, 456 U.S. at 195.  The burden of overcoming this presumption rests with the Petitioner.  *Id.* at 196.  As the Ninth Circuit described, this means that the Petitioner must establish "the ALJ's behavior, in the context of the whole case, was so extreme as to

**MEMORANDUM DECISION AND ORDER - 22**

display clear inability to render fair judgment." *Rollins v. Massnari*, 261 F.3d at 858 (internal quotation marks omitted).

Although the Court agrees with Petitioner that some of the ALJ's credibility determinations as to Petitioner's PTSD symptoms did not amount to substantial evidence, the Court does not find that Petitioner met his burden to demonstrate that the ALJ's behavior was so extreme that it displayed a clear inability to render fair judgment. Accordingly, Petitioner's claim of bias does not overcome the presumption this Court started with.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his decision, despite the fact that such evidence may be susceptible to a different interpretation and that there are troubling issues in this case created by Petitioner's language barrier. However, to simply express disagreement, without more, is not the function of a federal judge reviewing a Social Security determination.

Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is

**MEMORANDUM DECISION AND ORDER - 23**

supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **September 30, 2010**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge